The STATE of Ohio, Appellee,

v.

JOHNSON, Appellant.

[Cite as *State v. Johnson,* 155 Ohio App.3d 417, 2003-Ohio-6523.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19597.

Decided Dec. 5, 2003.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram, Assistant Prosecuting Attorney, for appellee.

Jay A. Adams, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Gary Johnson, appeals from his conviction and sentence for attempted rape, abduction, and domestic violence.

{¶ 2} During the early morning hours of November 11, 2001, Moraine police received a 911 hang-up call that was traced to an apartment located at 3452 Main Street in Moraine. Officer Lloyd was dispatched to that location.

{¶ 3} When Officer Lloyd approached the front door of the apartment, he heard a female voice coming from a bedroom next to the front door. The woman was crying and saying, "No Gary. Please don't. No." Despite Officer Lloyd's repeatedly knocking on the door and identifying himself, no one answered. Officer Lloyd continued to hear the woman's cries, but they became more muffled. Officer Lloyd became concerned and called for backup.

{¶ 4} Sergeant Keegan arrived, and he also heard a woman's muffled sobbing coming from the front bedroom of the apartment. At that point, Sergeant Keegan and Officer Lloyd pounded on the window, identified themselves as police officers, and warned the occupants that they would force an entry into the apartment unless the door was answered. Hearing no response, Sergeant Keegan kicked open the front door, and he and Officer Lloyd entered the apartment.

{¶ 5} Sergeant Keegan found defendant seated on the edge of the bed in the front bedroom, putting on his pants. Next to defendant on the bed was a woman, Michelle Crosley, who was very upset and crying uncontrollably. Crosley told Sergeant Keegan that defendant had accused her of cheating on him and that they had argued about it. Defendant had then forced her into the bedroom, slapped her in the face, and announced that he was going to have sex with her. When Crosley told defendant no, he attempted to anally rape her despite her pleas for him to stop. Crosley grabbed the phone and was able to dial 911 before defendant took the phone away. When police arrived, Crosley attempted to run out of the bedroom but defendant grabbed her. Defendant sat on Crosley so she couldn't answer the door and covered her mouth with his hands so she couldn't cry out.

{¶ 6} The officers observed some slight bruising and swelling on Crosley's cheek. Sergeant Keegan also noticed a ripped tee shirt that Crosley identified as the clothing she was wearing when defendant attacked her. Although Crosley told Sergeant Keegan that she had consumed three drinks that night and Keegan noticed an odor of alcohol on Crosley's breath, neither Keegan nor Officer Lloyd believed that Crosley was under the influence of alcohol or drugs. There were no symptoms or signs of impairment, and Crosley answered all questions appropriately. Despite going over her story repeatedly, Crosley consistently gave the

same account of what had happened. Her written statement was consistent with her oral statements.

{¶ 7} Defendant was indicted on one count of abduction, R.C. 2905.02(A)(2), one count of attempted rape, R.C. 2907.02(A)(2)/R.C. 2923.02(A), and one count of domestic violence, R.C. 2919.25(A). At some point prior to trial, Crosley wrote letters to the prosecutor recanting her accusations against the defendant. Nevertheless, this matter proceeded to trial before a jury.

{¶ 8} Crosley testified for the defense at trial. She recanted statements she had made to police, and she denied that defendant had hit her, restrained her, or attempted to rape her. According to Crosley, she was intoxicated, having consumed several drinks with friends earlier that day, and more drinks with defendant that evening. She said that she had also taken Prozac and Wellbutrin that had been prescribed for her bipolar/manic-depressive disorder.

{¶ 9} Crosley claimed that she had been angry with defendant because he would not allow her to go out drinking that night with her friends. She and defendant argued, and she called 911 because she wanted the argument to stop and defendant to leave her residence. With respect to the statements she gave to police, Crosley explained that she would have said just about anything that night to get defendant out of her home.

{¶ 10} Crosley testified that while she remembered portions of the night in question, such as defendant's arrest, she could not remember other events such as her statements to police. Crosley also testified that although she has been diagnosed with diabetes and advised to limit her alcohol consumption, she was very intoxicated that night. Crosley claimed that she and defendant had engaged in consensual sex that evening. According to Crosley, her eyes were red and swollen from crying and drinking, not from being hit, and the torn tee shirt Sergeant Keegan found in her bedroom was not what she had been wearing but a dust rag she had left on the floor.

{¶ 11} Dr. Rahman, a psychiatrist who was treating Crosley, also testified for the defense. Dr. Rahman testified that Crosley had failed to keep scheduled follow-up appointments with his office and that when she did come in, it was apparent that she had not been taking her medications. In January 2002, Crosley told Dr. Rahman that she had been sober for eight years. Later, she told him she had been drinking heavily before this incident.

{¶ 12} Dr. Rahman testified that persons such as Crosley who suffer from bipolar disorder often experience problems in relationships due to dramatic mood swings that can occur in a short period of time. Use of alcohol exaggerates the symptoms of bipolar disorder and can result in impaired cognition and an

inability to accurately perceive events. This is even more likely if the person taking medication is also drinking.

{¶ 13} Dr. Rahman was asked his opinion about Crosley's mental state at the time she called police. Dr. Rahman was asked to assume several facts that were identical to Crosley's trial testimony in this case, including that Crosley had type II diabetes and had been advised to limit her alcohol intake but that she was drinking heavily on the night in question, and that Crosley suffers from bipolar/manic-depressive disorder and had taken 40 milligrams of Prozac and 150 milligrams of Wellbutrin in the hours immediately before this incident. Based upon these assumed facts, Dr. Rahman opined that Crosley likely was delirious when she called 911 and unable to process information or perceive events as they really were, and thus was quite capable of making very faulty judgments. According to Dr. Rahman, however, an observer would be able to tell that a person was in that condition.

{¶ 14} At the conclusion of trial, the jury found defendant guilty on all charges. The trial court sentenced defendant to concurrent prison terms totaling five years.

{¶ 15} Defendant has timely appealed to this court from his conviction and sentence.

## ASSIGNMENT OF ERROR

{¶ 16} "The verdict of the jury was against the manifest weight of the evidence."

{¶ 17} A weight-of-the-evidence argument challenges the believability of the evidence: which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagel* (Sept. 6, 1996), Montgomery App. No. 15563, 1996 WL 501470. The proper test to apply to that inquiry is the one set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717:

{¶ 18} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

{¶ 19} In *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684, this court stated:

{¶ 20} "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals

to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id.

{¶ 21} This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97–CA–03, 1997 WL 691510.

{¶ 22} Defendant's claim that his convictions are against the manifest weight of the evidence is based upon this reasoning: Dr. Rahman testified that it was likely that Crosley was delirious at the time she called police and incapable of accurately perceiving events; Dr. Rahman's expert opinion was not contradicted by the state; Dr. Rahman's opinion was based upon hypothetical facts identical to the facts in this case; thus, the statements Crosley made to police just after she called 911 were unreliable, and because the state's case against defendant rests entirely upon those statements, the jury lost its way in finding defendant guilty.

{¶ 23} This case was a credibility contest between police and Crosley. By its guilty verdict, the jury obviously chose to disbelieve Crosley's trial testimony and rejected Dr. Rahman's expert opinion, and instead elected to believe Crosley's statements to police after calling 911. In doing so, the jury did not lose its way.

{¶ 24} The state argues, and we agree, that the jury, as the trier of fact and in resolving conflicts in the evidence, was free to reject any facts, including those upon which Dr. Rahman's expert opinion was based, that the jury believed were not proven by the evidence presented at trial. Under those circumstances, the jury could also reasonably reject Dr. Rahman's opinion.

{¶ 25} One critical assumed fact underlying Dr. Rahman's opinion was that Crosley had been drinking heavily and was intoxicated when she called 911. Crosley testified at trial that she had consumed six or seven drinks with friends earlier that day, and had had more drinks with defendant that evening. Crosley also claimed, however, that while she failed to follow her doctor's advice to limit her drinking because of her diabetes, she did follow her doctor's advice and took the medications prescribed for her bipolar disorder. Given that inconsistent response by Crosley to medical advice, the jury could reasonably choose to disbelieve Crosley's claim that while she selectively followed some of her doctor's advice, she also rejected other advice. Furthermore, in January 2002, Crosley told Dr. Rahman that she had been sober for eight years. Months later, in August 2002, she told Dr. Rahman she had been intoxicated and unable to remember everything during this incident. Additionally, neither Officer Lloyd

nor Sergeant Keegan observed any signs or symptoms suggesting that Crosley was under the influence of alcohol or drugs while she was in their presence.

{¶ 26} Based upon the totality of this conflicting evidence, the jury had a sufficient and reasonable basis to reject as not credible Crosley's testimony that she had been drinking heavily and was intoxicated when she called 911, one of the pivotal assumptions underlying Dr. Rahman's expert opinion about Crosley's mental state at the time she called police. Accordingly, the jury acted reasonably and did not lose its way in choosing to reject Dr. Rahman's opinion.

{¶ 27} In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that a manifest miscarriage of justice has occurred, or that the jury lost its way in choosing to believe, as it was entitled to, Crosley's statements to police immediately after calling 911 rather than her later testimony at trial, as well as Dr. Rahman's expert opinion based upon Crosley's trial testimony. Defendant's conviction is not against the manifest weight of the evidence presented at trial.

{¶ 28} The assignment of error is overruled. The judgment of the trial court will be affirmed.

Judgment affirmed.

FAIN, P.J., and FREDERICK N. YOUNG, J., concur.